Bob DANIELS, Respondent,

v.

**BOARD OF CURATORS OF LINCOLN
UNIVERSITY, Appellant.**

Nos. WD 57215, WD 57255.

Missouri Court of Appeals,
Western District.

Jan. 30, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 29, 2001.

Application for Transfer Denied
Aug. 21, 2001.

Keith Frederick Fuller, Jefferson City, for appellant.

Robert Layton Desselle, Independence, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

This appeal arises from a judgment in favor of Bob Daniels against the Board of Curators of Lincoln University. Daniels' petition contained ten counts, but at trial only three were submitted to the jury: (1) race discrimination, (2) age discrimination, and (3) violations of his procedural due process rights as a government employee in his termination without a hearing. The jury awarded Daniels $200,000 on his procedural due process claim, but found for the University on the discrimination claims. The University appeals, contending that the court erred in denying its motion for judgment notwithstanding the verdict on the due process claim because: (1) Daniels failed to establish that he had a property interest in continued employment

with the University as vice-president of student affairs; and (2) Daniels was not deprived of a liberty interest because there was no publication by the University of its reasons for dismissing Daniels, nor was he subsequently unable to take advantage of other employment opportunities. The University also challenges the verdict directing instruction submitted to the jury. Because we find that any claimed error regarding the instruction was not properly preserved, we do not address it. Because we find that Daniels established a property interest, we affirm the judgment.

## BACKGROUND

Mr. Daniels began employment with Lincoln University in July 1989 as vice-president of student affairs and associate professor of education, a non-tenured faculty position. He attained tenure after one year and received a full professorship. At the time of hiring, Daniels had a written contract of employment as a faculty member, but no contract was in place regarding his position as vice-president of student affairs. His claim here involves only his termination from the non-academic position of vice-president of student affairs.

Daniels testified that he had conflicts with peer administrators from the beginning of his employment with the University in 1989 due to communication difficulties. For example, there were conflicts between him and another vice-president as to repairs to be made in student dormitories. On another occasion, when a vacancy opened in the University counseling center, Daniels received a recommendation from the director of the counseling system that the University president's wife should apply for the position. Daniels conveyed to the president the director's suggestion and expressed concerns about it. After meeting with the university president, Mr. Rayburn, and the university personnel director and university attorney, and after being assured that Mrs. Rayburn was a legally acceptable candidate, Daniels recommended her for the position. The Board of Curators approved the appointment. After serving as counselor for a time, Mrs. Rayburn became the interim director of the counseling center. Just a few weeks prior to President Rayburn's decision to terminate him, Daniels complained to President Rayburn that Mrs. Rayburn was being paid for time she did not work and recommended that she be suspended. The president advised Daniels that he would refer the issue to the Board of Curators. Daniels points out that the state auditor later found that Mrs. Rayburn indeed was overpaid and owed the University $5,000. On yet another occasion, Daniels was charged with investigating an allegation of hazing by a University fraternity. He complained about how another administrator had handled the investigation. When he discovered that one of the participants in the hazing was the son of a member of the Board of Curators, that member told him to cease the investigation or "heads would roll." Daniels testified that he took it as a threat.

On August 7, 1995, President Rayburn informed Daniels by letter that he was recommending to the Board of Curators that Daniels be removed as vice-president. The letter set forth reasons for his recommended termination, such as complaints about Daniels' performance, allegations of racist and sexist remarks by Daniels, and insubordination by Daniels. Daniels notes, however, that prior to the letter of August 7, the only correspondence Daniels ever received from the president indicated that he was doing a good job. Daniels claims that the president's actions came only after Daniels challenged the improper payments to Mrs. Rayburn.

Daniels requested a "bill of particulars" as to why he was to be terminated, and he requested a hearing. In September of 1995, the Board of Curators met and discussed Daniels' removal as vice-president. The Board did not hold a hearing because it was surprised when Daniels appeared at the meeting. On November 10, 1995, Daniels received a letter from President Rayburn advising Daniels that the Board had approved his termination as vice-president. On November 27, 1995, the Board wrote Daniels and advised him of his termination. As vice-president and professor, Daniels' salary was $73,000 annually; whereas after termination as vice-president, his salary was $57,000 or $59,000 [1] annually as a faculty member. He continued in the professor position, and continued receiving incremental wage increases, until his departure in early 1999 when he accepted a teaching position with St. Paul's College for $50,000 annually.

## DISCUSSION

The University claims the trial court erred in denying its motion for judgment notwithstanding the verdict on Daniels' due process claims for the following reasons:

1. The evidence established that Daniels did not have a property interest because he is an at-will employee, who could be terminated for any reason or for no reason;

2. Daniels did not have a liberty interest because there was no publication by the university of the reasons for the termination.; and

3. The submission of the verdict directing Instruction No. 9 to the jury did not properly instruct the jury regarding findings required for plaintiff to prevail on his due process claim.

## STANDARD OF REVIEW

In reviewing a denial of a motion for judgment notwithstanding the verdict, review is essentially the same as for review of a denial of a motion for directed verdict—we review the record to determine whether the plaintiff made a submissible case. *Brenneke v. Dept. of Missouri, Veterans of Foreign Wars*, 984 S.W.2d 134, 137 (Mo.App.1998). A case "may not be submitted 'unless each and every fact essential to liability is predicated upon legal and substantial evidence.' " *Id.* In determining whether the evidence was sufficient to support the jury's verdict, we view the evidence in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences which conflict with that verdict. *Id.* If the record contains probative facts to support the conclusion reached by the jury, we will affirm. *Id.* If a party makes a case under any theory submitted to the jury, the motion for directed verdict and motion for judgment notwithstanding the verdict are properly denied. *Nelson v. Wabash Railroad Company*, 300 S.W.2d 407, 409 (Mo. 1957). Thus, for example, if a party submits alternative theories of negligence and there is evidence to support one of the theories, the trial court would not commit error in overruling a motion for directed verdict. *De Lay v. Ward*, 364 Mo. 431, 262 S.W.2d 628, 630 (1953). Rule 72.01(a) requires that a motion for directed verdict state the specific grounds therefore. A motion for judgment notwithstanding the verdict is a motion "to have judgment entered in accordance with the motion for a directed verdict." Rule 72.01(b). Therefore, a sufficient motion for directed verdict is required to preserve the motion for

1. Daniels could not remember exactly the amount of his reduced salary.

judgment notwithstanding the verdict and for appeal. *Fust v. Francois*, 913 S.W.2d 38, 45 (Mo.App.1995).

■■■■ An issue not raised in a motion for directed verdict may not be used to seek a judgment notwithstanding the verdict on that issue or for obtaining appellate review of the trial court's denial of judgment notwithstanding the verdict on that ground. *Hatch v. V.P. Fair Foundation, Inc.*, 990 S.W.2d 126, 137–8 (Mo.App.1999). Our review of the legal file does not reveal a copy of either a motion for directed verdict at the close of the plaintiff's evidence or at the close of all the evidence. It is the obligation of the University, as the appellant, to provide us with a sufficient record to show preservation of its issues on appeal for us to˙ review those issues. *American Express Travel Related Services v. Mace*, 26 S.W.3d 613, 615 (Mo. App.2000). Although it is preferable that a motion for directed verdict be in writing, it also may be made orally. Our review of the transcript on appeal reflects that a motion was made (and suggests that a written motion was filed), but the transcript does not reflect any claimed grounds for the motions. The closest the record comes to articulating any ground is during the instruction conference, where the University's counsel said, in objecting to the due process verdict director: "That's the one I don't think should be submitted to the jury, because there was no evidence to suggest that any type of due process was required for them, since he was an administrator and served at the pleasure of the school." Although a motion for directed verdict must state its basis with some particularity, courts have, under some circumstances, applied a liberal construction to the actual assignment of error made. *Frisella v. Reserve Life Ins. Co. of Dallas Tex.*, 583 S.W.2d 728, 731–732 (Mo.App. 1979). Giving the implied reference to the University's motion for directed verdict at the close of all the evidence its most liberal construction, we can only discern a general objection that Daniels was not entitled to any due process because he was an at will employee. Lincoln can, therefore, not claim error in the denial of the motion for judgment notwithstanding the verdict unless neither due process theory was submissible.

*Entitlement to Due Process*

■■■■ A public employee is not automatically entitled to procedural due process merely by reason of his status as a government employee. He may be so entitled if he either demonstrates a property interest in continued employment or a violation of his property interest in his reputation ("liberty interest"). Ronald D. Rotunda, et al., *Treatise on Constitutional Law, Substance and Procedure*, 3rd ed. at § 17.5(d) (1999). As stated above, giving the defendant a most favorable view of the record it has presented, we find that the only error preserved is whether Daniels had a property interest that Lincoln University violated.

*Property Interest*

■■■■ We next consider whether Daniels was deprived of a property interest in his continued employment, entitling him to the right to be advised of the reasons for his termination and a name-clearing hearing. "To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. at 564, 577, 92 S.Ct. 2701 (1972). In Missouri, under certain circumstances, a public employee has a constitutionally protected property interest in continued

employment. *See Moore v. Bd. of Educ. of Fulton Sch.,* 836 S.W.2d 943 (Mo. banc 1992), *State ex. rel. Donelon v. Div. of Employment Securities,* 971 S.W.2d 869 (Mo.App.1998). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—*rules or understandings* that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added). For employees to have a property interest in their employment, they must have a claim of entitlement to it, and this usually arises from limitations put upon employers by statute or contract regarding termination of employees. *State ex rel. Donelon,* 971 S.W.2d at 874. Missouri has held that if there is a property interest established, the employee is entitled to notice of the reasons for dismissal and an opportunity to be heard prior to having his employment interrupted. *Moore,* 836 S.W.2d at 947. The opportunity to be heard must be at a meaningful time and in a meaningful manner. *Id.*

■ The University argues that Daniels was an at-will employee in his administrator capacity and therefore had no constitutionally protected property interest in continued employment. "[I]n the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such cases no action can be obtained for wrongful discharge." *Remington v. Wal–Mart Stores, Inc.,* 817 S.W.2d 571, 577 (Mo.App.1991). Daniels had no employment contract with the University for his position as vice-president of student affairs. Nor are we aware of a statutory provision protecting him from discharge without cause. The University contends that Daniels was a tenured em-

ployee in his position as professor but not as a University administrator, and acknowledges that if Daniels had been dismissed from the tenured professor position, he may have been entitled to due process. But an administrative officer, the University argues, is an at-will employee and, thus, is not entitled to due process.

Daniels concedes that an at-will employee has no property interest to support a claim for violation of due process when discharged. He admits there was no employment contract and has submitted no statutory provision protecting him from discharge or which altered his status as an at-will employee. However, he argues, an employment contract or statutory provision are not the only means of establishing a property interest or allowing a cause of action. He argues that he had a property interest resulting from customs, practices or defacto policies promulgated by the University.

■ We address whether the University's customs, practices and de facto policies established a property interest in Daniels. Citing *Winegar v. Des Moines Indep. Cmty. Sch. Dist.,* 20 F.3d 895, 899 (8th Cir.1994), he argues that he has a property interest resulting from customs, practices or defacto policies arising out of the University's employee handbook. At trial, Melvin Fooks, former Director of Personnel for the University, testified that: (1) non-academic university personnel are at-will employees; (2) Daniels did not have a contract for the vice-president position but only for the faculty position; and (3) Daniels was an at-will employee as vice-president. Lincoln University had in place a rules and regulations manual; Daniels notes that Chapter 79 required that non-academic personnel were all employees *except* teaching faculty. Mr. Fooks testified that the University had policies declaring that the University was

an at-will employer but also had policies that it would not terminate employees without a good reason. He also testified that the University had informally set aside its at-will employment policy in favor of allowing employees grievance and appeals procedures.

The Handbook allows University employees to request a "bill of particulars" regarding the reasons for termination and provides a right to a hearing on request. Daniels asserts that, under this University custom, practice and defacto policy, a person in his position may not be terminated without notice of the reasons or a hearing. "A property interest in employment can also be created by implied contract arising out of customs, practices and de facto policies." *Winegar*, 20 F.3d at 899; *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). In *Perry*, the court held that an employee's lack of a contract, alone, does not defeat his claim of violation of procedural due process. *Id.* at 601, 92 S.Ct. at 2699–2700. Instead, a property interest may be implied by "words and conduct" between surrounding circumstances. *Id.* at 602, 92 S.Ct. at 2700.

The University's Employee Handbook and Rules and Regulations manual provide employment guidelines for University employees in the same or similar position of Daniels. Pertinent portions are reproduced as follows:

## II. EMPLOYMENT PRACTICES

Personnel policies in this manual apply to all employees of the University with the exception of faculty who are subject to policies outlined in a separate document entitled *Faculty Handbook.*

Mr. Fooks, director of personnel at the time of Daniels' termination, testified that he interpreted this clause to apply to all employees except faculty, that "it would apply to all staff, non-faculty," including the vice-president of student affairs.

## TERMINATION FOR CAUSE

The University's rules concerning dismissal are intended with good judgment and fair treatment. A careful review of every case recommended for dismissal will be made by the appropriate area head before any dismissal notice is given. Such action will be taken only as a last resort after reasonable and *documented* efforts have been made to correct the situation.

Unless a person has specifically been granted academic continuous tenure by action of the Board of Curators, the term of employment is considered to end at the expiration of the term of appointment.

Mr. Fooks testified that this clause would apply to Daniels as vice-president of student affairs and he or any other non-faculty employee must be terminated for cause. Fooks interpreted the clause to mean the University must have a good reason to terminate someone.

Chapter–79–NON–ACADEMIC PERSONNEL

In cases of termination for cause other than financial exigency, a bill of particulars citing reasons for termination shall be written by the President and delivered to the staff member by certified mail. The staff member is then entitled to his or her full rights under the law.

* * *

Suspension of termination (dismissal) may be effected by the area administrative officer, subject to the right of a hearing if requested by the employee.

* * *

Notification shall include reasons, with specificity, for the termination and notice of the right of a hearing.

* * *

A termination hearing, when requested by the employee, shall be granted. This hearing shall be conducted in accordance with that procedure outlined in the University's Non–Academic Grievance Procedure.

* * *

## GRIEVANCE PROCEDURE

The Board of Curators, recognizes the right of employees to express their concerns and to seek a solution concerning disagreements arising from working relationships, working conditions, employment practices, or differences of interpretation of policy which might arise between the University and its employees. After satisfactorily completing the probationary period, an employee may process a grievance concerning discharge or other action which the employee believes was not for just cause.

When asked about the University's custom, practice and usage of the term "non-academic personnel," Fooks testified that the University was "kind of strange in that [in addition to the policy requiring good reason to fire someone] there's also a policy in place that says [the University] is an at-will employer," which means it could fire an employee "for any reason or no reason at all at any time." He referred to it as a "Catch 22," but testified that the grievance procedure and appeal procedure "kind of set aside the at-will employment," and he followed those procedures based on conversations with the University's legal counsel. Conversely, Lavon Wilson, a member of the Board of Curators at the time of Daniels' termination, testified that an administrator, such as Daniels, in the "president's cabinet," was not afforded a hearing before the Board before being discharged and that there was no hearing process for a person at that same level. The handbook makes no distinction, and the University has pointed to no other written policy between the position Daniels held and other non-academic personnel. Whether the employment policies and rules discussed above applied to Daniels in his administrative position was for the jury.

The cited provisions represented to University employees, such as Daniels, that reasons and a hearing would be allowed prior to termination. Those representations certainly imply that the University has a self-imposed prohibition against terminating an employee unfairly, and would only terminate Daniels after providing some procedural due process.

Daniels received notification from President Rayburn of his intention to recommend to the Board that Daniels be terminated as vice-president of student affairs. Daniels served a letter upon the Board refuting the charges and sought an opportunity to appear before the Board to resolve the matter. George Brooks, also a member of the Board at the time of Daniels' termination, testified that he arranged a time for Daniels to appear before the Board. Daniels appeared at the designated Board meeting but no hearing took place. Daniels notified the Board that he was making a formal grievance against the recommended termination, and thus notified the University that he considered his dismissal to be against University policy.

 The promise of the University that its "rules concerning dismissal are intended with good judgment and fair treatment," implies a promise to deal fairly with its employees in dealing with terminations. And President Rayburn's letter advising Daniels of his recommendation of termination seems to support the setting aside of at-will employment rules in favor of following the policies established by the University; it served to provide a bill of particulars citing reasons for the termination. We find it important to point out

that the mere right to a "careful review" did not change the nature of Daniels' employment from at-will employment to an arrangement in which he had a property interest. " 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). "The granting of a right to appeal does not of itself change an employee's status as an employee at will." *Sadler v. Village of Bel–Ridge*, 741 S.W.2d 889, 891 (Mo.App.1987). Here, however, the University provided more than a mere right to review. The University created in Daniels a property interest by its promise that termination would not occur without good cause.

Therefore, there was an understanding that Daniels' continued employment would not be terminated unfairly or without a hearing before the Board of Curators. Daniels relied on this understanding, which arose from the University's own employee handbook. Accordingly, we find that the representations made there created an "understanding" that was the genesis of a property interest protected by the 14th Amendment. *See Roth*, 408 U.S. at 577, 92 S.Ct. 2701. We further find that by promulgating such a policy and fostering such an understanding, the University relinquished its freedom to terminate Daniels completely at will. We have not overlooked the holding in *Cole v. Conservation Comm'n*, 884 S.W.2d 18 (Mo.App.1994), that the employee manual could not be used as a way to exempt the employee from the "at will" doctrine. *Id.* at 20. However, *Cole* does not control here because, there, the employee manual explicitly stated that nothing in the manual required the employer to have just cause to terminate any employee at any time for any reason. *Id.* By contrast, the employee handbook here did not have that same or similar language, and, more important-

ly, it did contain language, as outlined above, from which we conclude that Daniels had a limited protected interest in his job. Likewise, *Moon v. City of Sedalia*, 723 S.W.2d 597 (Mo.App.1987) does not control here. There, this court held that a municipal worker had no 14th Amendment property interest from personnel policies and procedures adopted by the City that would protect him from discharge. *Id.* at 599–600. However, that case turned on the language in the manual which did not provide for unbiased and impartial review, as did the employee handbook in our case. *Id.*

We find that Mr. Daniels had a protected property interest in his continued employment, thus entitling him to notice of the reasons for termination and an opportunity to be heard. The court properly denied Lincoln's motion for judgment notwithstanding the verdict.

*Jury Instruction*

▆▆▆ Lastly, we address the University's allegation that the court erred in submitting the verdict directing Instruction No. 9 to the jury, on the basis that it did not properly instruct the jury regarding findings required for plaintiff to prevail on his due process claim. Daniels asserts that this point was not preserved for review because the objection at trial was not specific and is different from what the University is now arguing on appeal, and further, that the University did not suggest a substitute instruction.

▆▆▆ We agree that the alleged error was not properly preserved. For a reviewing court to rule on an allegedly improper instruction given at trial, the objecting party must have brought the claimed problem to the trial court's attention so that it has an opportunity to remedy the defect. Rule 70.03. The rule requires a specific objection at trial, before submission of the case to the jury, providing in part:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.... The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

■ A trial court cannot be faulted for failing to take corrective action that it was not asked to take; a party's failing to object at trial results in no issue being preserved for appellate review. *Norris v. Barnes*, 957 S.W.2d 524, 527 (Mo.App. 1997). The University's only objection to the verdict director prior to its submission to the jury was that there was no evidence to support Daniels' property interest theory for his due process claim. Specifically, the University's objection was:

> That's the one I don't think should be submitted to the jury, because there was no evidence to suggest that any type of due process was required for them, since he was an administrator and served at the pleasure of the school.

■ On appeal, the University argues that the instruction: (1) improperly mixed elements of Daniels' due process property interest and liberty interest claim; (2) failed to require as part of a property interest claim that the jury must determine that Daniels was a permanent employee in his position as vice-president of academic affairs; and (3) failed to require as part of Daniels' liberty interest claim that Lincoln University made untrue public statements regarding Daniels and that Daniels was unable to obtain employment because of the stigma attached because of such statements. The University did not specifically object to the verdict director at trial on any of these grounds presented on appeal. All of these objections are to the form of the instruction. The only objection made at trial was as to submissibility of the case. We have determined that a submissible case was made on the property interest theory for his due process claim. Not only did the University fail to adequately preserve its objection at trial prior to submission of the case to the jury, but the allegations in its motion for new trial are not the same as the objection made at the instruction conference. "Where an alleged error relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal." *McKersie v. Barnes Hosp.*, 912 S.W.2d 562, 567 (Mo. App.1995) (internal citations omitted). The University's other contentions of error with respect to the verdict director were not preserved for appeal. The point is denied.

The judgment is affirmed.

PATRICIA BRECKENRIDGE, Judge and JAMES M. SMART, Jr., Judge, concur.