**Olive LaVaun FLETCHER,**
**Respondent,**

v.

**KANSAS CITY CANCER CENTER,**
**LLC, et al., Appellants.**

**No. WD 69942.**

Missouri Court of Appeals,
Western District.

July 28, 2009.

Charles H. Stitt, for Appellant.

Michael W. Blanton, for Respondent.

Before: HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Judge.

Dr. Richard Mundis, M.D., appeals from a judgment entered against him in the Circuit Court of Jackson County in a medical malpractice action filed against him by Olive Fletcher. For the following reasons, we affirm the judgment.[1]

---

1. Rule 84.04(c) provides that "[t]he statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument. Such statement of facts may be followed by a resume of the testimony of each witness relevant to the points presented." Dr. Mundis sets forth only the facts favorable to himself and includes a great deal of argument within his statement of facts. Fletcher notes these violations of Rule 84.04(c) but then promptly sets forth a statement of facts equally biased to herself. As a result, dismissal of the appeal for failure to comply with our briefing rules is not an option as it would unjustifiably reward a party that is equally guilty of such rule violations.

In 2005, Dr. Mundis diagnosed and began treating Fletcher for polycythemia vera, a condition where the bone marrow makes too many red blood cells thereby causing the blood to get too thick. On April 8, 2005, after medication had failed to sufficiently thin Fletcher's blood, Dr. Mundis determined that Fletcher needed a therapeutic phlebotomy, a procedure similar to blood donation, in order to reduce the thickness of her blood. Dr. Mundis ordered nurses at the Kansas City Cancer Center, where he was employed, to perform that procedure. When the procedure was finished, an elastic bandage was placed over Fletcher's arm. A short time later, Fletcher began feeling pain in her arm and an area of swelling under the bandage, and she notified a nurse of these problems. The nurse removed the bandage, examined the swelling, and went to get Dr. Mundis. Dr. Mundis briefly looked at Fletcher's arm, told her that the whole thing was going to turn black, and walked out of the room. The nurse subsequently gave Fletcher a prescription for pain medication prescribed by Dr. Mundis and escorted her out of the center shortly after 5 p.m.

After her arm continued to swell and become increasingly painful through the night, Fletcher had her son take her to the emergency room at St. Joseph's Hospital the next morning. She was diagnosed with having a compartment syndrome, a buildup of blood in a closed space, in her arm. That condition had developed to the point that Fletcher required a fasciotomy, an incision along the length of the compartment where the blood had collected, to relieve the pressure in her arm. The incision along the entire length of her arm required 47 staples to close. Fletcher remained at the hospital for six days before moving to a rehabilitation center where she remained for a month, attempting to regain some of the functioning in her right hand.

On August 19, 2005, Fletcher filed a petition in the Circuit Court of Jackson County asserting claims of medical malpractice against Dr. Mundis and the Kansas City Cancer Center. The case was tried before a jury, which eventually returned a verdict in favor of Fletcher and against Dr. Mundis in the amount of $350,361.00. The jury found in favor of the Kansas City Cancer Center on her claims against it. The trial court entered judgment consistent with the jury's verdict and denied Dr. Mundis's post-trial motions. Dr. Mundis brings two points on appeal.

■ In his first point, Dr. Mundis claims that the trial court erred in failing to grant his motion for judgment notwithstanding the verdict. He contends that he was entitled to JNOV if the evidence presented at trial was insufficient to support any of the alternative allegations of negligence submitted to the jury. In making this assertion, Dr. Mundis clearly misunderstands the nature of JNOV and our standard of review where a motion for JNOV is denied.

■ "The standard of review for the denial of a motion for judgment notwithstanding the verdict is the same as for review of a denial of a motion for directed verdict." *Gill Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 717 (Mo.App. W.D.2004). "The record is reviewed to determine whether the plaintiff made a submissible case." *Id.* (internal quotation omitted). "In determining whether the evidence was sufficient to support a jury's verdict, an appellate court views the evidence in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences which conflict with that verdict." *Id.* (internal quotation omitted). "If the record contains probative facts to support

the conclusion reached by the jury, we will affirm." *Daniels v. Board of Curators of Lincoln Univ.*, 51 S.W.3d 1, 5 (Mo. App. W.D.2001). " 'If a party makes a case under any theory submitted to the jury, the motion for directed verdict and motion for judgment notwithstanding the verdict are properly denied.' " *Gill Constr.*, 157 S.W.3d at 717 (quoting *Daniels*, 51 S.W.3d at 5). "Thus, for example, if a party submits alternative theories of negligence and there is evidence to support one of the theories, the trial court would not commit error in overruling a motion for directed verdict" or for JNOV. *Daniels*, 51 S.W.3d at 5. Accordingly, while Dr. Mundis claims otherwise, we must affirm the trial court's denial of a motion for JNOV if Fletcher made a submissible case for negligence against Dr. Mundis on any theory. *Ladish v. Gordon*, 879 S.W.2d 623, 627 (Mo.App. W.D. 1994).

█ Contrary to Dr. Mundis's assertions, Fletcher really only advanced one theory of liability at trial and that was the only theory submitted to the jury. "A *prima facie* case of medical malpractice consists of three general elements: (1) an act or omission of the defendant failed to meet the requisite medical standard of care; (2) the act or omission was performed negligently; and (3) the act or omission caused the plaintiff's injury." *Edgerton v. Morrison*, 280 S.W.3d 62, 68 (Mo. banc 2009) (citing *Sundermeyer v. SSM Reg'l Health Servs.*, 271 S.W.3d 552, 554 (Mo. banc 2008)). Fletcher theorized that Dr. Mundis should have either (1) kept her at the clinic for observation, (2) placed her in a hospital for observation, (3) ordered a duplex scan of her arm, or (4) provided Fletcher with sufficient instructions as to what to look for and when to call him for further medical attention. She claimed that doing any of these things would have alerted medical personnel to her condition and would have allowed them to perform procedures to alleviate her condition that were less extensive, less painful, and would not have required rehabilitation. This theory was clearly supported by the record.[2]

Dr. Mundis admitted that he did not keep Fletcher at the clinic for observation, that he did not have her admitted to a hospital for observation, and that he did not order a duplex scan of her arm. He further admitted that he did not provide Fletcher with any written discharge instructions. While he claimed that he generally told Fletcher to call if the swelling increased or if she needed anything, the jury was not required to accept that testimony as credible, especially in light of an abundance of testimony to the contrary. Thus, the record established all of omissions claimed to be negligent by Fletcher.

Dr. James Balliro testified at trial that the treatment provided by Dr. Mundis did not meet the standard of care for a physician treating a hematoma.[3] Dr. Balliro stated that Fletcher should have been held for observation either at the clinic or in a hospital. Dr. Balliro stated that "clearly, had she been held for observation, observation would have revealed that the hema-

---

**2.** Dr. Mundis has failed to provide this Court with all of the records necessary to assess the sufficiency of the evidence in this case. Several videotaped depositions were played for the jury but not transcribed in the trial transcript. Neither those videotapes nor the multitude of exhibits admitted into evidence at trial, including all of the medical records, were included in the record in this case.

However, the record that was provided by Dr. Mundis, in and of itself, supports the judgment.

**3.** Dr. James Balliro testified that in referring to the standard of care in his testimony he meant the failure to use the degree of skill or learning that a physician would use under the same or similar circumstances.

toma was expanding and her arm was getting worse, and so then, of course some other intervention would have occurred." In the alternative, Dr. Balliro indicated that a duplex scan could have been ordered that would reveal if the artery had been pierced and the location of the hole. He testified that, once the leak in the artery was identified, the problem could have easily been fixed by using the Doppler probe on the duplex ultrasound to put direct pressure on the hole in the artery or, if that failed, a vascular surgeon could have made a small incision and used one or two stitches to close the hole in the artery.

Dr. Balliro further testified that Dr. Mundis also failed to provide Fletcher with adequate discharge instructions. He stated that, even if Dr. Mundis's testimony about the instructions he gave to Fletcher were true, the instructions fell below the standard of care because they weren't complete and were not also provided in writing. He testified that she should have been instructed to watch for expansion of the bruising and pain because pain, tightness, and swelling are bad. Dr. Balliro indicated that the point of the instructions was to tell the patient what to look for and when they need to contact the doctor for further help. Dr. Balliro stated that the development of the compartment syndrome could have been halted if Dr. Mundis had met the standard of care for the treatment of the hematoma. He stated that the development of the compartment syndrome and the resultant need for a fasciotomy could have been avoided 100%.

The foregoing evidence sufficiently established the elements of a medical malpractice claim and supports the jury's verdict in favor of Fletcher. Point denied.

■ In his second point, Dr. Mundis claims the trial court erred in submitting the verdict director to the jury and denying his subsequent motion for new trial on that basis. He contends that disjunctive theories of liability were submitted to the jury and that some or all of those theories were not supported by the evidence.

■ "Whether a jury was properly instructed is a question of law that this Court reviews *de novo.*" *Edgerton,* 280 S.W.3d at 65. "An issue submitted by an instruction must be supported by the evidence." *Id.* "In making this determination as to a particular instruction, this Court views the evidence in the light most favorable to its submission." *Id.* at 65–66. "Reversal for instructional error is appropriate when the instruction misdirected, misled, or confused the jury and resulted in prejudice." *Id.* at 66.

The verdict director submitted to the jury stated:

Your verdict must be for the plaintiff and against defendant Richard J. Mundis, M.D., if you believe:

First, defendant Richard J. Mundis, M.D., either:

Failed to order plaintiff Olive LaVaun Fletcher to be held for observation; or

Failed to order plaintiff Olive LaVaun Fletcher be admitted for observation; or

Failed to order a duplex scan of Olive LaVaun Fletcher's arm; or

Failed to provide instructions to plaintiff Olive LaVaun Fletcher to call or seek medical treatment if swelling worsened in her arm; and

Second, defendant Richard J. Mundis, M.D., in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of skill and

learning ordinarily used under the same or similar circumstances by the members of defendant Richard J. Mundis, M.D.'s profession.

Certainly, this verdict director was not artfully drafted in utilizing the disjunctive "or" where Fletcher's theory was that Dr. Mundis was negligent for failing to do at least one of the listed items. In light of the overwhelming evidence that Dr. Mundis did none of the listed things and the manner in which his liability was argued by Fletcher, however, we are unable to conclude that this verdict director misled or confused the jury or that any prejudice resulted from its submission. Furthermore, the submission of the various elements of the instruction are supported by the evidence.

As noted supra, Dr. Mundis conceded that he had not provided Fletcher with any written instructions, held Fletcher for further observation at the clinic, admitted her to a hospital for evaluation, or ordered a duplex scan of her arm. Conflicting evidence was admitted regarding what, if any, discharge instructions were given to Fletcher orally, but Dr. Mundis admitted no written instructions were given, and the evidence clearly supported a finding by the jury that Fletcher received no discharge instructions at all. Accordingly, the evidence overwhelmingly established that all of the omissions listed in the instruction occurred, and the case was argued over whether these omissions violated the standard of care and whether they caused Fletcher's injuries. The disjunctive nature of the instruction would have had no impact on those determinations.

Likewise, the record supported a finding that Dr. Mundis breached the standard of care when he failed to perform any of those actions. Dr. Balliro testified that Dr. Mundis's omissions failed to conform to the standard of care for a physician treating a hematoma. Therefore, the jury could reasonably have found Dr. Mundis negligent in these omissions.

While Dr. Mundis argues that there was no evidence establishing that the standard of care required Dr. Mundis to instruct Fletcher to call "if the swelling worsened" because Dr. Balliro's testimony at trial only addressed calling in the event of an "expansion of the bruising" or an increase in pain, that argument lacks merit. Such symptoms can reasonably be viewed as intertwined since an expansion of the bruising or increase in pain under these circumstances would mean the swelling had worsened. Moreover, Nurse Hahn testified that once a hematoma has been identified by medical personnel, the standard of care for any medical personnel requires that discharge instructions be provided to the patient "making sure that the patient knows to let us know if the swelling is getting worse, ... you start feeling any tingling or numbness in your extremity, letting us know if the pain has worsened, and basically letting us know if, you know, things are just getting worse." She stated that it was critical to instruct Fletcher "to call the office if the symptoms worsened or if she felt worse, if anything got worse, go to the nearest emergency room." Indeed, Dr. Mundis testified that he believed he told Fletcher to call if the swelling worsened and that he does so "after every patient practically," certainly implying that there was need for such instruction. In short, the evidence sufficiently established that the standard of care required Dr. Mundis to instruct Fletcher to call if the swelling worsened.

As to causation, "courts must consider expert testimony on causation as an integrated whole." *Wicklund v. Handoyo*, 181 S.W.3d 143, 151 (Mo.App. E.D.2005). Dr. Balliro stated that Dr. Mundis's failure to perform any of the omitted acts caused or contributed to cause the developing com-

partment syndrome. He testified that, had the continued swelling been discovered earlier, doctors could have utilized less invasive procedures to correct the problem. Thus, the evidence supported a finding that Dr. Mundis's negligent omissions injured Fletcher. *See Edgerton*, 280 S.W.3d at 70 ("The testimony supports the theory that, but for Surgeon's negligence in diagnosis, Patient would have had the opportunity to undergo a preferable repair procedure.").

Dr. Mundis's claim that Dr. Balliro's testimony was insufficient because he identified less invasive procedures that "could" have been performed rather than identifying the procedures that "would" have been performed is unworthy of extensive comment. Suffice it to say that Dr. Balliro could not know which procedure would have been performed when there was a choice between available treatments. The clear import of his testimony was that, if the developing compartment syndrome was discovered earlier, which would have occurred if the standard of care had been met, absent further negligence by Dr. Mundis or other medical personnel, a less invasive procedure would have been performed to correct the problem with Fletcher's arm and that the fasciotomy would have then been avoided. He specifically identified two such procedures that could have been chosen from. The evidence clearly supported a finding that Dr. Mundis's failure to meet the standard of care resulted in injury to Fletcher.

The final argument offered by Dr. Mundis on the issue of causation is an assertion that Dr. Balliro's causation opinion was not offered to a reasonable degree of medical certainty. However, Dr. Mundis did not object to Fletcher's failure to use the phrase "within a reasonable degree of medical certainty" when soliciting testimony from Dr. Balliro and failed to cross-examine Dr. Balliro on his degree of cer-

tainty and is, therefore, deemed to have waived this contention. *Williams v. Daus*, 114 S.W.3d 351, 363 (Mo.App. S.D.2003).

In short, while the instruction could have been drafted more clearly, the claims contained therein were supported by sufficient evidence, and there is absolutely no reason to believe that the jury was misled by the instruction or that Dr. Mundis was otherwise prejudiced thereby. Indeed, Dr. Mundis fails to indicate on appeal how he was prejudiced by the submission of this verdict director. Point denied.

The judgment is affirmed.

All concur.