Paul C. Wilson, Judge
BNSF Railway Company ("BNSF") appeals the judgment of the circuit court, entered upon a jury verdict, in favor of Sherry Spence ("Spence") on her wrongful death cause of action for the death of her husband, Scott Spence ("Decedent"). This Court has jurisdiction under article V, section 10 of the Missouri Constitution, and the judgment is affirmed.
Background
Spence sued BNSF for the wrongful death of Decedent, who was killed in 2012 after a BNSF train struck his pickup truck at a railroad crossing. Spence alleged BNSF was negligent for failing to trim the vegetation around the railroad crossing, which prevented Decedent from being able to see the approaching train. Spence also pursued a claim of respondeat superior liability against BNSF, alleging its train crew members were negligent for failing to stop or slow the train because the crew members, from their higher vantage point, should have seen Decedent's pickup truck as he was approaching the railroad crossing. In response, BNSF alleged Decedent was negligent in driving his vehicle onto the railroad crossing as the train was approaching.
*772 The case went to trial in April 2015. The jury found in Spence's favor, assessing 15 percent of the fault to BNSF for the conduct of its train crew, 80 percent of the fault to BNSF for its failure to maintain the railroad crossing, and 5 percent of the fault to Decedent. The jury awarded Spence $20 million, which the circuit court reduced to $19 million for the fault of Decedent. After the verdict was rendered, BNSF filed a motion for new trial based on juror nondisclosure as well as other grounds. The circuit court overruled BNSF's motion, and BNSF appeals.
Analysis
On appeal, BNSF asserts the circuit court erred in overruling BNSF's motion for a new trial based upon a juror's intentional nondisclosures. BNSF also claims the circuit court erred in overruling BNSF's motion for a new trial because it should not have submitted (over BNSF's objections) the verdict directors in Instruction Nos. 6 and 7 and the corresponding Verdict Form A. Finally, BNSF claims the circuit court erred in overruling BNSF's motion for a new trial because it should not have submitted (over BNSF's objection) Instruction No. 8 dealing with BNSF's duties and because it should have granted a mistrial during opening statement when Spence's counsel referred to BNSF's removal of certain sight tables from its traffic engineering instructions.
I. Juror Nondisclosure
At the center of BNSF's motion for a new trial is the conduct of Juror Kimberly Cornell ("Juror Cornell"). Before trial, each juror received a juror questionnaire with their name preprinted at the top. On Juror Cornell's questionnaire, however, her name was spelled incorrectly as "Kimberly Ann Carnell ." Juror Cornell did not correct this misspelling at the top of her questionnaire, but plainly wrote "Steven D. Cornell" in the space reserved for the name of her husband and her signature at the bottom of the questionnaire appears to be "Kim Cornell," not "Kim Carnell." On her questionnaire, Juror Cornell answered Questions 14 and 15 in the negative, indicating she had never been a party to a lawsuit and she had never made a claim against another to recover money for physical injuries or damage to property. After filling out her questionnaire, Juror Cornell returned it to the circuit court.
Twelve days before trial, the circuit clerk's office distributed the juror questionnaires, the pool selection report, and a seating chart to both sides. On each of these documents Juror Cornell's last name was misspelled "Carnell." Relying on these documents, BNSF claims it conducted a Case.net search for "Kimberly Carnell" and found no litigation in which she was listed as a party.
When Juror Cornell reported for jury selection, she informed circuit court staff that her name had been misspelled at the top of her questionnaire. Upon learning this, the court's deputy clerk informed counsel for both parties of the correct spelling of Juror Cornell's name. The deputy clerk also made a handwritten correction to Juror Cornell's name on the master list of venirepersons and provided that list to counsel on both sides. The deputy clerk took these measures prior to 8:28 a.m., when the venire was seated and voir dire began.[1]
Before counsel began questioning members of the venire, the trial judge explained how important it was for prospective *773 jurors to be truthful and forthcoming. The trial judge then asked specifically whether any member of the venire had been a party to a lawsuit (their "litigation history") and not disclosed that fact on their juror questionnaire. Juror Cornell did not answer in the affirmative even though she had been a party to several lawsuits, including-most notably-a wrongful death lawsuit in which she had been the plaintiff. Later, BNSF's counsel asked whether any member of the venire, or any of their close friends or family members, had been involved in a motor vehicle accident (their "accident history"). Juror Cornell did not answer in the affirmative even though her son had been killed in the accident that gave rise to her wrongful death lawsuit. BNSF repeated this question at various times and in various ways,[2] but each time Juror Cornell remained silent.
Voir dire concluded at 11:23 a.m., at which time the court took a recess. When court resumed, the trial judge took up the parties' motions to strike for cause and their peremptory challenges, as well as other matters. At 12:35 p.m., the jury-including Juror Cornell-was seated and sworn.[3] Eight days later, the jury rendered a verdict in Spence's favor.
In its motion for new trial, BNSF claimed that immediately after trial a BNSF representative overheard Juror Cornell tell Spence she could relate to Spence because she had a son who was killed in a motor vehicle accident.[4] The representative introduced himself to Juror Cornell, who replied with her full (and correct) name. A Case.net search for "Kimberly Cornell" revealed a number of lawsuits in which Juror Cornell had been a plaintiff or respondent, including her wrongful death action arising out of the death of her son in a motor vehicle accident. Based on this evidence, BNSF claimed Juror Cornell had engaged in intentional misconduct by failing to respond truthfully to questions concerning her litigation history and accident history.
Spence responded that, pursuant to Rule 69.025(e), BNSF had waived any claim for relief based upon juror nondisclosure because it failed to conduct a reasonable investigation (i.e., by searching Case.net for "Kimberly Cornell") and informing the court of Juror Cornell's undisclosed litigation history prior to the jury being seated and sworn. BNSF claimed it had done a Case.net search for "Kimberly Carnell," the name it had been given, and it had no reason to suspect her name was "Kimberly Cornell" until after the verdict was rendered. At an evidentiary hearing, the circuit court received testimony from the deputy clerk who said she advised counsel for both parties orally of the misspelling of Juror Cornell's name and provided *774 them a master list of the venire on which she manually had corrected this misspelling.[5] The circuit court specifically found this testimony credible and overruled BNSF's motion for new trial. On appeal, BNSF claims this was error requiring this Court to vacate the judgment and remand for a new trial.
"This Court will not disturb the circuit court's ruling on motion for a new trial based on juror nondisclosure unless the trial court abused its discretion." Johnson v. McCullough , 306 S.W.3d 551, 555 (Mo. banc 2010) (citation omitted). "A trial court abuses its discretion if its 'ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " Id. (citation omitted). Moreover, any question regarding the proper construction of Rule 69.025 and its reasonable investigation requirement is reviewed de novo because "this Court interprets its rules by applying the same principles used for interpreting statutes." McGuire v. Kenoma, LLC , 447 S.W.3d 659, 662 (Mo. banc 2014) (citation omitted).
Rule 69.025 provides, in full:
(a) Proposed Questions. A party seeking to inquire as to the litigation history of potential jurors shall make a record of the proposed initial questions before voir dire. Failure to follow this procedure shall result in waiver of the right to inquire as to litigation history.
(b) Reasonable Investigation. For purposes of this Rule 69.025, a "reasonable investigation" means review of Case.net before the jury is sworn.
(c) Opportunity to Investigate. The court shall give all parties an opportunity to conduct a reasonable investigation as to whether a prospective juror has been a party to litigation.
(d) Procedure When Nondisclosure Is Suspected. A party who has reasonable grounds to believe that a prospective juror has failed to disclose that he or she has been a party to litigation must so inform the court before the jury is sworn. The court shall then question the prospective juror or jurors outside the presence of the other prospective jurors.
(e) Waiver. A party waives the right to seek relief based on juror nondisclosure if the party fails to do either of the following before the jury is sworn:
(1) Conduct a reasonable investigation; or
(2) If the party has reasonable grounds to believe a prospective juror has failed to disclose that he or she has been a party to litigation, inform the court of the basis for the reasonable grounds.
(f) Post-Trial Proceedings. A party seeking post-trial relief based on juror nondisclosure has the burden of demonstrating compliance with Rule 69.025(d) and Rule 69.025(e) and may satisfy that burden by affidavit. The court shall then conduct an evidentiary hearing to determine if relief should be granted.
*775 Rule 69.025 (2011).[6]
The waiver provision of Rule 69.025(e) applies whether the juror nondisclosure occurred on the questionnaire or during voire dire, whether the questions to which the juror should have responded were clear or ambiguous, and whether the juror's nondisclosure was intentional or unintentional. In all cases, Rule 69.025 conditions the right of any party to seek relief on a claim of juror nondisclosure upon that party: (a) conducting a "reasonable investigation" (which Rule 69.025(b) defines as a "review of Case.net before the jury is sworn"); and (b) informing the court it has reasonable grounds to believe the nondisclosure has occurred. Most significantly, in order to preserve its right to seek relief, the party must do both of these "before the jury is sworn ." Rule 69.025(e) (emphasis added).
Here, according to the testimony of the deputy clerk (which the trial court specifically found credible), BNSF had more than four hours between the time she informed the parties of the misspelling of Juror Cornell's name (and provided a corrected copy of the master list of the veniremembers) and the time the jury was seated and sworn. This was ample time to search Case.net with the corrected spelling. Because BNSF failed to do so, it "waive[d] the right to seek relief based on juror nondisclosure" under Rule 69.025(e).
BNSF claims, even if it waived the right to seek relief for Juror Cornell's failure to disclose her litigation history, Rule 69.025(e) applies only to the nondisclosure of a juror's litigation history and, therefore, BNSF did not waive the right to seek relief for Juror Cornell's failure to disclose her accident history. This argument lacks direct textual support because, notwithstanding a number of references to "litigation history" throughout Rule 69.025 (including in Rule 69.025(e)(2) ), the waiver language in Rule 69.025(e) speaks to claims for "relief based on juror nondisclosure" and is not limited only to nondisclosures of a juror's litigation history.
That said, the Court need not decide in this case whether the waiver provision in Rule 69.025(e) would apply to a standalone claim that a juror failed to answer truthfully a question concerning her accident history because BNSF's claims that Juror Cornell failed to disclose her litigation history and her accident history were inseparably linked from the beginning. There can be no doubt that, had BNSF searched Case.net using a proper spelling of Juror Cornell's name, it would have discovered both. Not only was one of the cases returned in the Case.net search plainly identified as a "wrongful death" action, the docket entries for that litigation referred to a payment by an automobile insurance carrier and the first page of the petition in that action disclosed Juror Cornell's son had died in an automobile accident. In fact, BNSF admitted in the circuit court a simple Case.net search of Juror Cornell's name would have revealed both her failure to disclose her litigation history and her *776 failure to disclosure her accident history.[7]
Accordingly, this Court affirms the circuit court's overruling of BNSF's motion for a new trial based on juror nondisclosure.[8]
II. Verdict Directors and Verdict Form
Over BNSF's objections, the circuit court submitted the following verdict directors: Instruction No. 6 relating to Spence's claim BNSF was negligent for failing to maintain the railroad crossing to provide motorists with adequate sight lines to oncoming trains, and Instruction No. 7 relating to Spence's claim BNSF was liable under respondeat superior for the failure of BNSF's train crew to stop or slow the train as Decedent approached given their greater height and enhanced sight lines.[9] The circuit court also submitted Verdict Form A, which states:
Note: Complete the following paragraph by filling in the blanks as required by your verdict. If you assess a percentage of fault to any of those listed below, write in a percentage not greater than 100%, otherwise write in "zero" next to that name. If you assess a percentage of fault to any of those listed below, the total of such percentages must be 100%.
On the claim of Plaintiff Sherry Spence for compensatory damages for the wrongful death of her husband, Scott Spence, we the undersigned jurors assess percentages of fault as follows:
*777 Defendant BNSF on sight distance claim ______ % (zero to 100%) Defendant BNSF on failure to stop or slow claim ______ % (zero to 100%) Decedent Scott Spence ______ % (zero to 100%) TOTAL ______ % (zero or 100%) Note: Complete the following paragraph if you assessed a percentage of fault to Defendant BNSF:
We, the undersigned jurors, find the total amount of Plaintiff's compensatory damages, disregarding any fault of the Decedent Scott Spence, to be $__________.
On appeal, BNSF argues the circuit court erred in overruling its motion for new trial on the ground that, under MAI 20.02, the circuit court should have submitted a single verdict director with two disjunctive acts of negligence, rather than two separate verdict directors setting forth two independent theories of negligence. As a result, BNSF argues Verdict Form A also was improper in that it should have had only one line for its fault and one line for Decedent's fault. The Court rejects these arguments.
"Whether a jury was properly instructed is a question of law that this Court reviews de novo. " Edgerton v. Morrison , 280 S.W.3d 62, 65 (Mo. banc 2009) (citation omitted). "An issue submitted by an instruction must be supported by the evidence ...." Oldaker v. Peters , 817 S.W.2d 245, 251 (Mo. banc 1991) (citation omitted). "In making this determination as to a particular instruction, this Court views the evidence in the light most favorable to its submission." Edgerton , 280 S.W.3d at 65-66 (citation omitted). An instructional error is only grounds for reversal "when the instruction misdirected, misled, or confused the jury and resulted in prejudice." Id. at 66 (citation omitted).
According to BNSF, Spence's case was based upon two distinct acts of negligence and, therefore, the circuit court should have used MAI 20.02, "Multiple Negligence Acts Submitted," to submit those separate acts in the disjunctive. But Comment B to MAI 37.05(1) is directly on point and refutes BNSF's argument. This Comment states:
If a plaintiff seeks to recover in a comparative fault case from a master or principal based on both respondeat superior and also based upon the negligent acts of the master (i.e., based on the negligent driving of the employee and also based on the employer's negligence in furnishing a truck with defective brakes), then the jury should be asked to assess one percentage of fault based on the employee's driving, a different percentage of fault based on the employer's conduct in furnishing the truck with defective brakes, and another percentage *778 of fault based on the conduct of plaintiff. In this instance, the comparative fault verdict form would have a blank for the employee's percentage of fault (which is chargeable to both the employee and the employer); another blank for a percentage of fault for the employer's conduct as submitted in the verdict director submitting the employer's conduct in furnishing the truck with bad brakes (this fault is chargeable only to the master); and a blank for the percentage of fault assessed to plaintiff. However, in McHaffie v. Bunch , 891 S.W.2d 822 (Mo. banc 1995), the Supreme Court held that once an employer has admitted respondeat superior liability, it is improper to allow plaintiff to submit another theory of imputed liability against the employer (as distinguished from another theory of independent negligence).
Here, like the example in Comment B, Spence sought to recover on the basis of respondeat superior and on BNSF's own (or direct) negligence, and BNSF sought to have the jury attribute a percentage of comparative fault to Decedent. As explained in the Comment, therefore, each of these requires a separate verdict director and all three determinations should be recorded on separate lines in the verdict form.
Because MAI 37.05(1) is only to be used when agency is disputed, BNSF argues Comment B (which follows MAI 37.05(1) ) cannot apply because agency was not disputed in this case. Nothing in the language of Comment B depends upon whether agency is or is not disputed, however, and BNSF makes no compelling argument why the logic of Comment B should not apply equally in both situations. As noted above, the focus of Comment B is on what to do when the plaintiff makes a submissible case on separate claims of direct and imputed liability and the defendant makes a submissible case on comparative fault. Comment B correctly states the law, and the circuit court did not err in submitting Instruction Nos. 7 and 8 and Verdict Form A.
III. Instruction No. 8
BNSF claims the circuit court erred in overruling its motion for new trial because the court should not have submitted-over BNSF's objection-Instruction No. 8 regarding the duties owed by BNSF. As given, Instruction No. 8 read:
An unwavering approach by a vehicle at a railroad crossing, where the crew knew or should have known that a collision was imminent, is a specific, identifiable hazard. Such a hazard requires the train's crew either to slow the train or stop, in addition to any other preventative measures it can take, to avoid the collisions.
Notably, Spence only sought to have the court give Instruction No. 8 after the court announced it would give two similar instructions requested by BNSF regarding the duties owed by it and by Decedent, i.e., Instruction No. 14 (regarding the duties owed by BNSF with respect to maintaining the crossing)[10] and Instruction No. 13 (regarding the duty owed by Decedent).[11]
*779 BNSF claims[12] Instruction No. 8 violated Rule 70.02(b) because it is an abstract statement of law on a subject already (and properly) addressed in Instruction No. 7 (the verdict director on Spence's respondeat superior claim). See Hale v. Burlington N. & Santa Fe Ry. Co. , 524 S.W.3d 603, 606 (Mo. App. 2017) ("applicable MAIs advised this jury of each party's respective legal obligations, precluding any other instructions on the same subject") (footnote and quotation marks omitted).
The Court need not reach this issue, however, because, one party "cannot sustain a claim of prejudicial error where the alleged defect in the [opposing party's] instruction also exists in her own." Jewell v. Arnett , 318 S.W.2d 277, 279 (Mo. 1958). See also Carson v. Evans , 351 Mo. 376, 173 S.W.2d 30, 32 (Mo. 1943) ("The rule is widely recognized that an appellant will not be heard to complain of an error or omission in respondent's instruction which is common to his own instruction or when his own exhibits the same fault.").
Here, BNSF will not be heard to complain about Instruction No. 8 because any flaw in Instruction No. 8 also is present in Instruction Nos. 13 and 14, which BNSF tendered. See, e.g. , Anderson v. Woodward Implement Co. , 256 S.W.2d 819, 824-25 (Mo. 1953) ("Having persuaded the trial court to give, at his request, two instructions covering that field of the case, the plaintiff will not be heard to base an assertion of reversible error upon the court's giving, at defendants' request, a third instruction upon the same subject matter."); Bowers v. Etherton , 216 S.W.2d 83, 87 (Mo. 1949) ("Whatever vice existed in defendant's instruction C also existed in plaintiff's instruction No. 7 and, if there be error, plaintiff may not complain."). Accordingly, the circuit court did not err in submitting Instruction No. 8.
IV. Opening Statement
Spence filed her original petition in February 2013. In December 2014, she amended her petition to raise additional claims that BNSF was directly negligent for removing the AASHTO sight tables[13] from its engineering instructions. In response, BNSF sought to designate an additional expert even though the time for designating experts had passed. Ultimately, the circuit court ruled that, if Spence withdrew her claim regarding the removal of the sight tables, it would overrule BNSF's motion for leave to designate an additional expert. Spence withdrew the claim, and the court overruled BNSF's motion.
At trial, Spence's counsel referenced BNSF's removal of the sight tables during her opening statement.[14]
*780 BNSF objected and requested a mistrial. The circuit court overruled the objection and denied the request for a mistrial. On appeal, BNSF claims the circuit court erred in overruling its motion for new trial because the circuit court should have granted a mistrial during Spence's opening statement.[15]
In opening statements, counsel is granted wide latitude to present a good-faith statement of what counsel expects the evidence will show. Buck v. St. Louis Union Tr. Co., 267 Mo. 644, 185 S.W. 208, 212 (Mo. 1916). "The scope of opening statements is within the discretion of the trial court." State v. Thompson , 68 S.W.3d 393, 395 (Mo. banc 2002) (citation omitted). "Review is only for abuse of discretion." Id. Equally important, mistrial is a drastic remedy and the decision to grant or deny such relief lies in the sound discretion of the trial court. Pierce v. Platte-Clay Elec. Co-op., Inc. , 769 S.W.2d 769, 778 (Mo. banc 1989) ). "Absent a manifest abuse of discretion, an appellate court will not interfere with the trial court's decision." Id.
In Spence's opening statement, counsel was entitled to refer to the AASHTO sight tables and BNSF's removal of them because counsel had a good-faith belief Spence's experts would testify about those subjects. The mere fact Spence was no longer claiming this as a separate direct negligent act (in the disjunctive with her claim BNSF was directly negligent for failing to maintain the crossing so as to provide motorists adequate sight lines), does not mean evidence of the AASHTO sight tables was not relevant to her existing claim of direct negligence. Indeed, Spence's opening statement turned out to be entirely accurate because Spence later called two experts who testified-without objection from BNSF-about these topics. Accordingly, the circuit court did not err in overruling BNSF's objection and request for a mistrial during opening statements and did not err in later overruling BNSF's motion for new trial on these same grounds.
Conclusion
For the reasons set forth above, the judgment of the circuit court is affirmed.[16]
Fischer, C.J., Draper, Russell and Breckenridge, JJ, concur;
Powell, J., dissents in separate opinion filed;
Stith, J., concurs in opinion of Powell, J.

After the jury was chosen, but before the jury was seated and sworn, the deputy clerk also provided counsel for both parties a jury seating chart on which Juror Cornell's name was spelled correctly.

The parties argue at length whether this and other questions were sufficiently clear and unambiguous as to make Juror Cornell's nondisclosures intentional or unintentional. As explained below, however, that issue is immaterial to the Court's holding. Accordingly, it is assumed for purposes of this opinion that Juror Cornell's nondisclosures were intentional and, by all appearances, inexcusable.

Three alternate jurors were seated and sworn, at least two of whom were still serving when the case was submitted and the remaining alternate jurors released.

These facts are taken from a proffer made concerning the BNSF representative's testimony. On appeal, BNSF claims the circuit court committed reversible error in refusing to allow this representative to testify. The testimony, however, was offered only to show Juror Cornell's nondisclosure was intentional. As explained below, that issue plays no part in this Court's holding. Accordingly, the Court holds the circuit court did not err in excluding this testimony.

BNSF argues it was never aware of the misspelling of Juror Cornell's name until after the jury returned its verdict, and that-despite the circuit court specifically finding the testimony of the deputy clerk about this issue credible-the circuit court did not expressly find BNSF was aware of this misspelling at least four hours before the jury was seated and sworn. This Court will defer to the credibility findings of the circuit court, however, and where "the trial court makes no specific findings of fact, [this Court] must assume that all facts were found in accordance with the result reached." Smith v. Brown & Williamson Tobacco Corp., 410 S.W.3d 623, 640-641 (Mo. banc 2013) (citation omitted).

Foreshadowing the adoption of Rule 69.025, this Court noted in Johnson v. McCullough , 306 S.W.3d 551 (Mo. banc 2010), that advancements in court technology and concerns over parties sandbagging claims of juror nondisclosure while they waited to see whether the jury's verdict was favorable weighed in favor of imposing a "reasonable investigation" standard and a requirement that juror nondisclosure claims be presented before the jury is seated and sworn. Id. at 559 ("Litigants should not be allowed to wait until a verdict has been rendered to perform a Case.net search for jurors' prior litigation history when, in many instances, the search also could have been done in the final stages of jury selection or after the jury was selected but prior to the jury being empaneled.").

BNSF's suggestions in support of its motion for new trial stated: "Had Ms. Cornell told the truth on her questionnaire, or had BNSF been provided accurate information so that it could have conducted its research on the correct prospective juror, BNSF would have learned that Ms. Cornell had made a claim and recovered money damages for her son's wrongful death in an automobile accident ." [Emphasis added.] To be clear, the Court is not holding a party will be held to know every fact that might be disclosed in the linked litigation documents available to counsel through Case.net. But, where-as here-the pertinent facts are readily apparent from the description of, docket entries for, and pleadings in a particular litigation, it is fair to hold a party to that knowledge.

BNSF argues the circuit court did not overrule its motion for new trial on the basis of Rule 69.025(e). But "appellate courts are primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result. To that end, the judgment must be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." Rouner v. Wise , 446 S.W.3d 242, 249 (Mo. banc 2014) (citations and quotation marks omitted).

Because BNSF's claim goes to its contention Instruction Nos. 7 and 8 should have been submitted in the disjunctive in a single verdict director and not to the specific language of those instructions, the language of Instruction Nos. 7 and 8 is not repeated here.

As given, Instruction No. 14 read:
You are instructed that Defendant BNSF is only required to keep its right-of-way reasonably clear of vegetation, undergrowth or other debris for a distance of 250 feet each way from the near edge of a public grade crossing where such things would materially obscure approaching trains from the view of travelers on the highway.

As given, Instruction No. 13 read:
You are instructed that when any person driving a vehicle approaches a railroad grade crossing, the driver of the vehicle shall operate the vehicle in a manner so he will be able to stop, and he shall stop the vehicle not less than fifteen feet and not more than fifty feet from the nearest rail of the railroad track and shall not proceed until he can safely do so if an approaching train is visible and is in hazardous proximity to such crossing.

BNSF's point relied on challenges Instruction No. 8 on two additional grounds, rendering it multifarious. "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." Kirk v. State , 520 S.W.3d 443, 450 n.3 (Mo. banc 2017). As a result, the Court exercises its discretion to review only the first theory, though the latter two theories could have been disposed of on the same ground.

"AASHTO" is the American Association of State Highway and Transportation Officials, and its sight tables are guidelines to determine whether the lines of sight at a railroad crossing are sufficient to afford motorists adequate warnings.

Specifically, Spence's counsel said during opening statements, "In order to be in a position where they don't have to improve crossings with lights and gates, BNSF has removed from their engineering instructions that employees use to evaluate crossings, the AASHTO sight table."

BNSF also sought to claim, in the same point relied on, that the circuit court erred in: (a) admitting Spence's evidence concerning the AASHTO sight tables and the fact BNSF had removed them from its engineering instructions; and (b) refusing to allow BNSF to call a previously undesignated expert to explain why the sight tables (and the fact BNSF had removed them) did not mean BNSF was negligent. A point relied on claiming the circuit court erred at three separate times and in three separate ways is multifarious and preserves nothing for review. Kirk , 520 S.W.3d at 450 n.3. As a result, the Court exercises its discretion to review only the first theory. Moreover, the other two theories lack merit in that BNSF never objected to Spence's evidence concerning the sight tables and the circuit court has great latitude in refusing to allow testimony from an undesignated expert when that testimony largely would have been cumulative to other expert testimony admitted into evidence.

Spence's motion to file a supplemental legal file is overruled as moot.