

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STEPHEN C. WYNN, ET AL., | ) | |
| | ) | |
| Respondents, | ) | WD82387 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | November 26, 2019 |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable William B. Collins, Judge

Before Division One:  Edward R. Ardini, Presiding Judge, Mark D. Pfeiffer, Judge and
Cynthia L. Martin, Judge

BNSF Railway Company ("BNSF") appeals from the trial court's entry of judgment in favor of Stephen C. Wynn ("Wynn") following a jury trial on Wynn's claim for damages under the Federal Employers' Liability Act ("FELA").[1]  BNSF alleges error in the submission and refusal of various jury instructions.  Finding no error, we affirm.

---

[1] 45 U.S.C. section 51 *et seq.*

**Factual and Procedural Background[2]**

Wynn began working for BNSF as a conductor in 2006. On November 25, 2013, Wynn was "deadheading" in the second locomotive of a train owned and operated by BNSF on a route from Kansas City, Kansas to Wellington, Kansas. Deadheading is a term used in the railroad industry to describe moving a crew member from one point to another when the crew member is not performing a service related to operation of the train.

The train approached an intersection in Butler County, Kansas where an unoccupied Honda Accord had been left on the tracks with its hazard lights flashing. The flashing lights became visible to Jared Nichols ("Nichols"), a BNSF conductor, approximately a mile from the intersection. Nichols could not determine the source of the flashing lights. He discussed them with Timothy McAferty ("McAferty"), a BNSF engineer.[3] At first, the men speculated that the lights were a "road closed" barricade. Though McAferty testified the flashing lights were out of the ordinary, the train was not placed into emergency procedure. Approximately a quarter of a mile from the intersection, Nichols realized the flashing lights were originating from a car on the tracks. Five seconds later, the train was placed into emergency procedure, and McAferty deployed the locomotive's emergency braking system. Approximately eleven seconds after the emergency braking system was deployed, the train collided with the Honda Accord.

---

[2]We view the facts in the light most favorable to the jury's verdict. *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 94 n.2 (Mo. App. W.D. 2015).

[3]While an engineer is responsible for the operation of the train's engine, a conductor is in charge of the train as a whole.

Because Wynn was sitting in the conductor's chair in the second locomotive, he did not have a clear view of the tracks ahead of the train. However, Wynn had the train radio on so that he could hear communications between or from the crew. Wynn was not advised over the radio by McAferty or Nichols about the observed flashing lights. Wynn's first indication of a problem was when he saw sparks shoot up forty to fifty feet in the air from the window of the second locomotive. At that time, he was sitting in the conductor's chair, facing forward, with his feet on the footrest. Wynn did not know what was happening and did not have time to brace for impact. He was "thrown around," first forward from the brake application and then backward from the impact of the train's slack action.[4]

Once the train came to a stop, and for approximately an hour after the accident, Wynn walked along the length of the train to search for anyone who might have been injured by the collision, as the crew was not yet aware that the Honda Accord had been unoccupied. Wynn testified that he did not remember feeling any pain during that time or during the approximately three-hour trip in a van that drove the crew to Kansas City. However, when Wynn exited the van he realized he was sore. Wynn completed paperwork to clock out and then went home. The next day, Wynn awoke in pain and realized he was injured. BNSF's trainmaster put Wynn on trauma leave, the standard 72-hour leave BNSF gives crewmembers who are involved in a grade crossing accident. Medical examinations revealed that Wynn's right knee, ankle, and foot were injured in the accident. Wynn

---

[4]A railroad operations consultant who testified at trial described a train's "slack action" as the free movement between the cars and engines based on the draw bar and coupling system between the cars and engines. According to the consultant, slack is a factor in train movement and must be kept in mind when operating trains.

ultimately required surgery to repair his ankle. Wynn was off work for some time, but ultimately returned to work as a conductor.

Wynn[5] filed suit against BNSF on November 24, 2015.[6] Wynn's first amended petition ("First Amended Petition"), filed July 26, 2016, alleged that BNSF was negligent because it: (1) failed to maintain adequate sight distances for train crews operating near the intersection; (2) failed to adequately warn approaching motorists of known unsafe and dangerous conditions existing at the railroad crossing; (3) failed to reasonably train, educate, and instruct its employees regarding BNSF operating rules pertaining to maintaining safe braking procedure; (4) failed to give adequate warning of the hazards and dangers to its employees; (5) failed to properly control the braking system of the lead locomotive; (6) failed to keep proper control of the locomotive; (7) failed to keep a proper lookout for obstructions on the track; (8) failed to properly maintain its grade crossing and surrounding property; (9) failed to operate the train at a speed that would allow it to be safely stopped before the collision; and (10) failed to provide proper radio warning or proper emergency radio communication before applying the emergency brakes.[7]

After a five-day trial to a jury during which testimony was received from fifteen witnesses, Wynn's case was submitted with two verdict directors which directed the jury

---

[5]Wynn's wife, Jade Wynn, was also named as a plaintiff in the initial petition. She was not named as a plaintiff in the first amended petition.

[6]Wynn's initial petition also named Victor Rico ("Rico"), the man who had been driving the Honda Accord, as a defendant.

[7]The First Amended Petition no longer named Rico as a defendant, *see supra* note 6, and added Automobile Club Inter-Insurance Exchange ("Automobile Club"), Wynn's automobile insurer, as a defendant. The First Amended Petition asserted claims against Automobile Club for: (1) breach of contract for failure to pay the limits of Wynn's policy for underinsured motorist coverage; and (2) vexatious refusal to pay the policy limits for underinsured motorist coverage. Prior to trial, Wynn dismissed Automobile Club without prejudice.

to find in favor of Wynn and against BNSF on a theory that BNSF negligently failed to reasonably train its employees (Instruction No. 7), and on a theory that BNSF employees negligently failed to properly control the locomotive or provide Wynn with a reasonable warning (Instruction No. 8). The jury returned verdicts in Wynn's favor on both verdict directors after less than four hours of deliberation, and assessed Wynn's damages at $3,500,000. On August 10, 2018, the trial court entered a judgment ("Judgment") in favor of Wynn awarding damages in the amount of the jury's verdict reduced by a $50,000 prior settlement, plus post-judgment interest at the statutory rate, and costs.

BNSF filed a motion for new trial on August 20, 2018, and an amended motion for new trial ("Amended Motion for New Trial") and a motion for judgment notwithstanding the verdict on September 10, 2018. The trial court denied BNSF's post-trial motions on December 3, 2018.

BNSF appeals.

**Analysis and Standard of Review**

BNSF asserts three points on appeal, each of which claims trial court error in the submission or refusal of jury instructions.

"'Whether a jury was properly instructed is a question of law that [we] review[] *de novo*.'" *Spence v. BNSF Ry. Co.*, 547 S.W.3d 769, 777 (Mo. banc 2018) (quoting *Edgerton v. Morrison*, 280 S.W.3d 62, 65 (Mo. banc 2009)). Each issue submitted by instruction must be supported by the evidence presented at trial. *Id.* "'In making this determination as to a particular instruction, [we] view[] the evidence in the light most favorable to its submission.'" *Id.* (quoting *Edgerton*, 280 S.W.3d at 65-66).

5

"We review a trial court's decision not to give a proffered instruction under a *de novo* standard of review, determining whether it was supported by the evidence and the law." *Rader Family Ltd. P'ship, L.L.L.P. v. City of Columbia*, 307 S.W.3d 243, 252 (Mo. App. W.D. 2010) (citing *Marion v. Marcus*, 199 S.W.3d 887, 893-94 (Mo. App. W.D. 2006)).

***Point One: Instruction No. 7***

BNSF's first point on appeal alleges that the trial court erred in submitting Instruction No. 7 to the jury. Instruction No. 7 directed the jury to find in Wynn's favor if it believed:

> First, [BNSF] failed to provide its locomotive engineer reasonable training in proper train handling, or [BNSF] failed to provide its locomotive engineer and/or conductor reasonable training to warn of possible emergencies.
>
> Second, [BNSF] in any one or more of the respects submitted in Paragraph First was negligent, and
>
> Third, such negligence resulted in whole or in part in injury to [Wynn].

BNSF alleges that Instruction No. 7 was erroneous in two respects: (1) the instruction exceeded the scope of the pleadings because Wynn's First Amended Petition did not plead a failure to provide reasonable training in proper train handling or to warn of possible emergencies; and (2) there was insufficient evidence to support submission of Instruction No. 7 to the jury.

BNSF's point on appeal is impermissibly multifarious. Rule 84.04(d)(1)[8] requires each point on appeal to concisely state the trial court ruling or action that is challenged and

---

[8]All Rule references are to Missouri Supreme Court Rules (2018).

the legal reasons for the claim of reversible error. BNSF's first point on appeal violates this Rule because it raises multiple, independent claims of trial court error. Points on appeal that "'group[] together multiple, independent claims rather than a single claim of error'" preserve nothing for appellate review. *Griffits v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 n.6 (Mo. banc 2018) (quoting *Kirk v. State*, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017)).

BNSF's point on appeal also violates Rule 84.04(e), which requires with respect to each point on appeal, "a concise statement describing whether the error [alleged in the point on appeal] was preserved for appellate review; if so, how it was preserved; and the applicable standard of review." In addition, Rule 84.04(e) requires all factual assertions in the argument portion of a brief to be accompanied by specific page references to the relevant portion of the record on appeal. "'To preserve a claim of instructional error, a specific objection must be made stating distinctly the matter objected to and the grounds of the objection. The same objection must also be raised in the motion for a new trial.'" *Joseph F. Wagner, Jr. Revocable Tr. U/A v. Thomson*, No. WD81512, 2019 WL 3557556, at *5 (Mo. App. W.D. Aug. 6, 2019) (quoting *Carroll v. Kelsey*, 234 S.W.3d 559, 562 (Mo. App. W.D. 2007)). Compliance with Rule 84.04(e) thus required BNSF to identify where in the record it made the specific objections to Instruction No. 7 at issue in the first point on appeal, and where in its Amended Motion for New Trial those same issues were raised. BNSF's brief summarily states without citation to specific page references in the record that BNSF "preserved the issue whether Wynn waived his right to raise a failure to train of possible emergencies claim in its Amended Motion for New Trial." [Appellant's Brief, p.

7

22] BNSF does not address, however, whether or how it preserved the claims of instructional error raised in its first point on appeal by specific objections at trial, before the jury was instructed.

In addition, BNSF misidentifies our standard of review in violation of Rule 84.04(e). Though the first point on appeal is framed as a claim of instructional error, BNSF cites to our standards of review for denial of a motion for new trial and for grant of a judgment notwithstanding the verdict. [Appellant's Brief, p. 22] BNSF's brief never raises or addresses the standard of review applicable to claims of instructional error.

"Compliance with Rule 84.04 is mandatory." *Terpstra v. State*, 565 S.W.3d 229, 241 (Mo. App. W.D. 2019). "'A party's failure to substantially comply with Rule 84.04 preserves nothing for appellate review . . . .'" *Shelter Mut. Ins. Co. v. Mitchell*, 413 S.W.3d 348, 352 (Mo. App. S.D. 2013) (quoting *FIA Card Servs., N.A. v. Hayes*, 339 S.W.3d 515, 517 (Mo. App. E.D. 2011)). BNSF's multiple violations of Rule 84.04 warrant dismissal of the first point on appeal. However, because we have the discretion to review non-compliant points on appeal *ex gratia* where the argument made is readily understandable, we elect to review BNSF's first point on appeal on the merits. *See State ex rel. Hawley v. Robinson*, 577 S.W.3d 823, 827-29 (Mo. App. E.D. 2019) (electing to review two points on appeal that were not in compliance with Rule 84.04 because the arguments were readily understandable).

Our independent review of the transcript reveals that during the instruction conference, BNSF objected to Instruction No. 7 on the basis that it exceeded the scope of the allegations in the First Amended Petition, and on the basis that the evidence did not

8

support submission of the instruction. However, after the trial court indicated its intention to approve Instruction No. 7, BNSF's attorney advised that the parties had agreed to slightly modify the language of the proposed instruction.[9] A revised version of Instruction No. 7 was emailed to the trial court. The trial court read the revised instruction aloud. Counsel for Wynn and BNSF confirmed on the record that each agreed with the instruction as revised. BNSF's counsel then clarified: "When I said we had no objection to it, what I meant is that we had no objection to the form of it. We clearly challenge the sufficiency of the evidence." By acquiescing to the form of Instruction No. 7, BNSF abandoned its claim that the theory of negligence tendered in the instruction exceeded the scope of the allegations in the First Amended Petition. *Joseph F. Wagner, Jr. Revocable Tr. U/A*, 2019 WL 3557556, at *6 (holding that claim of instructional error based on submission of alternative theories of recovery in a single verdict form was waived where appellant agreed to the use of a single verdict form during instruction conference, notwithstanding the appellant's preserved objection to submissibility of one of the theories).

That leaves only BNSF's claim that Instruction No. 7 was not supported by the evidence. The argument portion of BNSF's brief does very little to develop this claim of error. BNSF's brief summarily asserts that "Wynn failed to elicit any evidence to support . . . [the] claim for failure to train to warn of possible emergencies." [Appellant's Brief, p. 25] BNSF's argument relies primarily on the fact that Wynn's expert witness testified that

---

[9]The agreed upon modification to Instruction No. 7 involved Paragraph First. As originally tendered by Wynn, the last phrase of that paragraph provided that "[BNSF] failed to provide its locomotive engineer and/or conductor reasonable training in proper train emergency procedures." The agreed upon modification to Paragraph First changed this phrase to provide that "[BNSF] failed to provide its locomotive engineer and/or conductor reasonable training to warn of possible emergencies."

9

he was not opining about whether BNSF's employees were properly trained, and was only opining about whether the employees acted in compliance with their training. Yet, BNSF acknowledges that on cross examination, McAferty, the train's engineer, was asked about training received regarding notifying deadheaders about observed hazards. Among other things, McAferty was asked whether he "ever receive[d] any training about what might happen -- you say this [referring to observing potential hazards ahead on or near the tracks] happens all the time. Did you receive any training about what to do when this kind of thing happens?" McAferty answered "[n]ot that I can recall." McAferty also indicated he could not recall ever being tested "on one of these situations" in a simulator. These questions were a part of a discussion with McAferty about why deadheaders on board were not alerted before McAferty and Nichols realized the potential hazard they had observed warranted putting the train into emergency procedure. McAferty acknowledged there was no reason he could not have picked up the radio to tell Wynn and other deadheaders about the flashing lights observed a mile before the collision, given that the flashing lights were an unusual situation.

BNSF quarrels with how this testimony should be interpreted, and argues it is not sufficient to support submission of Instruction No. 7. We disagree. In determining whether each issue submitted by an instruction is supported by the evidence presented at trial, we view the evidence in the light most favorable to its submission. *Spence,* 547 S.W.3d at 777. A jury could reasonably infer from McAferty's testimony that BNSF failed to reasonably train its conductor and/or engineer to warn passengers (including deadheaders)

10

of possible emergencies. In light of our standard of review, BNSF's claim that Instruction No. 7 was not supported by the evidence is without merit.

BNSF's first point on appeal is denied.

### *Point Two: Instructions No. 7 and No. 8*

BNSF's second point on appeal argues that the trial court erred in submitting Instructions No. 7 and No. 8 to the jury. As noted in our discussion of BNSF's first point relied on, Instruction No. 7 directed the jury to find in favor of Wynn if it believed "[BNSF] failed to provide its locomotive engineer reasonable training in proper train handling, or [BNSF] failed to provide its locomotive engineer and/or conductor reasonable training to warn of possible emergencies." Instruction No. 8 directed the jury to find in Wynn's favor if it believed:

> First, [BNSF's] locomotive engineer failed to properly control the train, or [BNSF's] locomotive engineer and/or conductor failed to provide [Wynn] reasonable warning, and
>
> Second, [BNSF's] employee(s) in any one or more aspects submitted in Paragraph First was (were) negligent, and
>
> Third, such negligence resulted in whole or in part in injury to [Wynn].

BNSF alleges that Instructions No. 7 and No. 8 were erroneous for three reasons: (i) Wynn failed to identify a standard of care breached by BNSF; (ii) Wynn failed to establish a causal link between BNSF's alleged negligence and his injury; and (iii) the disjunctive instructions prejudiced BNSF because the claims were not supported by the evidence.

As with its first point on appeal, BNSF's second point on appeal is impermissibly multifarious in violation of Rule 84.04(d)(1). The point on appeal challenges the

11

submission of two different instructions, and raises three legal issues with respect to the submission of each instruction, for a total of six independent claims of error. Compounding this violation, the point on appeal does not explain why, in the context of this case, any of the identified legal arguments support a claim of reversible error as to either or both of the identified Instructions. *See* Rule 84.04(d). The second point on appeal is in violation of Rule 84.04(d)(1), and preserves nothing for our review.[10] *Griffits*, 550 S.W.3d at 478 n.6.

In addition, the second point on appeal suffers the same maladies with respect to noncompliance with Rule 84.04(e) as were discussed in connection with BNSF's first point on appeal. BNSF's brief summarily states that it "preserved its claims that Wynn has failed to establish a submissible claim under FELA in both its post-verdict motions" without any citation to the record, and without any discussion of whether and how BNSF raised the legal issues identified in the second point on appeal with the trial court prior to submission of Instructions No. 7 and 8 to the jury. [Appellant's Brief, p. 28] *See Joseph F. Wagner, Jr. Revocable Tr. U/A*, 2019 WL 3557556, at *5 ("'To preserve a claim of instructional error, a specific objection must be made stating distinctly the matter objected to and the grounds of the objection. The same objection must also be raised in the motion for a new trial.'" (quoting *Carroll*, 234 S.W.3d at 562)).

Finally, BNSF again misidentifies our standard of review in violation of Rule 84.04(e). Though the second point on appeal is framed as a claim of instructional error, BNSF cites to standards of review applicable to the denial of a motion for new trial and to

---

[10]This is not the first time that BNSF, represented by the same law firm, has been warned that a point relied challenging a jury instruction was impermissibly multifarious in violation of Rule 84.04(d)(1). *See Spence*, 547 S.W.3d at 779 n.12.

the grant of a judgment notwithstanding the verdict. [Appellant's Brief, p. 28] BNSF's brief never raises or addresses the standard of review applicable to claims of instructional error.

"Compliance with Rule 84.04 is mandatory." *Terpstra*, 565 S.W.3d at 241. Compliance with Rule 84.04 is not required to create hyper-technical traps for the unwary or to afford a convenient means for avoiding review of a claim on the merits. Rather:

> Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made. Deficient points relied on force the appellate court to search the argument portion of the brief or the record itself to determine and clarify the appellant's assertions, thereby wasting judicial resources, and, worse yet, creating the danger that the appellate court will interpret the appellant's contention differently than the appellant intended or his opponent understood.

*Wallace v. Frazier*, 546 S.W.3d 624, 627-28 (Mo. App. W.D. 2018) (quoting *Treaster v. Betts*, 297 S.W.3d 94, 95 (Mo. App. W.D. 2009)). BNSF's noncompliance with Rule 84.04 with respect to its second point on appeal is too significant to ignore. Our review of the multifarious legal issues raised in the second point on appeal cannot be accomplished without requiring this Court to search the record to determine whether BNSF preserved each of the legal issues raised in the point as to both Instructions identified in the point. And our review of the multifarious legal issues raised in the second point would require this Court to act as BNSF's advocate by analyzing each issue through the lens of a standard of review not identified or addressed in BNSF's brief. Though we prefer to resolve issues on appeal on the merits, our preference to do so is not "a license for non-compliance with Rule 84.04." *Nichols v. Belleview R-III Sch. Dist.*, 528 S.W.3d 918, 927 n.15 (Mo. App.

13

S.D. 2017). "'[E]ach time we review a noncompliant brief ex gratia, we send an implicit message that substandard briefing is acceptable. It is not.'" *Id.* (quoting *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017).

BNSF's second point on appeal is dismissed for noncompliance with Rule 84.04.

***Point Three: Proposed Mitigation of Damages Instruction***

BNSF's third point on appeal challenges the trial court's refusal of BNSF's proposed jury instruction concerning mitigation of damages. The refused instruction provided as follows:

> If you find in favor of [Wynn], you must find that plaintiff failed to mitigate damages if you believe:
>
> First, [Wynn] failed to make reasonable efforts to return to work when cleared by his physician; and failed to cooperate with recommended therapy, and
>
> Second, [Wynn] in one or more of the respected [sic] submitted in Paragraph First, thereby failed to use ordinary care, and
>
> Third, [Wynn] thereby sustained damage[s] which would not have occurred otherwise.

BNSF claims that it was error to refuse this instruction because BNSF introduced evidence of Wynn's failure to mitigate damages and because "additional evidence remained to be presented to the jury." [Appellant's Brief, p. 45]

As with BNSF's first and second points on appeal, point three violates Rule 84.04(e). First, though point three on appeal claims error in refusing to submit a proffered instruction, BNSF's brief incorrectly cites to the standard of review for denial of a motion for new trial, and never identifies or addresses the standard of review for refusal of a proffered jury

14

instruction. [Appellant's Brief, p. 46] Second, BNSF summarily alleges that it preserved the error claimed in its third point on appeal because it raised the argument that "it was entitled to a jury instruction on the question of whether Wynn mitigated his damages in its Amended Motion for New Trial." [Appellant's Brief, p. 46] But, BNSF does not provide this Court with a record citation to the location in the Amended Motion for New Trial where this issue was raised. And BNSF does not identify whether and where in the record it proffered the purportedly refused mitigation instruction. To claim error based on the failure to give a required jury instruction, an appellant must demonstrate that it requested the refused instruction during trial and must raise the claim of error in its motion for new trial. *Duke v. Gulf W. Mfg. Co.*, 660 S.W.2d 404, 417 (Mo. App. W.D. 1983).

Despite BNSF's substantial noncompliance with Rule 84.04(e), we exercise our discretion to review BNSF's third point on appeal *ex gratia* because we are readily able to understand BNSF's argument and to address its merits.

Despite BNSF's representation to the contrary, its Amended Motion for New Trial did **not** claim trial court error in refusing to submit BNSF's proffered mitigation of damages instruction. Instead, the Amended Motion for New Trial claimed that the trial court erred in granting Wynn's motion for a directed verdict on the affirmative defense of mitigation of damages.[11] Because BNSF did not raise the trial court's refusal to submit a proffered

---

[11]Wynn never moved for a directed verdict on the affirmative defense of mitigation of damages, and the trial court never entered a directed verdict on the matter. BNSF acknowledges that its contrary claim in its Amended Motion for New Trial was in error, and attempts to explain the discrepancy in a footnote within its statement of facts:

> Wynn did not explicitly move for a directed verdict on [the] affirmative defense [of mitigation of damages]. However, after the Trial Court excluded evidence on Wynn's failure to mitigate damages, and rejected a related jury instruction, the legal result was the same as a directed verdict.

15

mitigation instruction in its Amended Motion for New Trial, the claim is not preserved for appellate review. *See* Rule 78.07(a) (which provides that allegations of error must be included in a motion for new trial in order to be preserved for appellate review). At best, the issue raised in BNSF's third point on appeal is subject to plain error review.

> [P]lain error review is rarely applied in civil cases . . . . Reversal for plain error in civil cases is only appropriate in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case.

*Ampleman v. Dish Network Serv., LLC*, 467 S.W.3d 845, 849 (Mo. App. S.D. 2015) (internal citations and quotations omitted). Nothing in the argument portion of BNSF's brief addressing the third point on appeal approaches this standard.

Our independent review of the record confirms that BNSF indeed proffered the mitigation instruction referred to in its third point on appeal, and that the instruction was refused. The refused instruction required the jury to find that Wynn "failed to make reasonable efforts to return to work when cleared by his physician; ***and*** failed to cooperate with recommended therapy." (Emphasis added.) In addressing the evidence heard by the jury, BNSF's brief describes evidence relating to Wynn's alleged failure to make reasonable efforts to return to work when cleared by a physician.[12] BNSF identifies no evidence heard by the jury relating to Wynn's alleged failure to cooperate with recommended therapy. The

---

[Appellant's Brief, p. 18 n.3] Whether the "legal result" was the same or not, the fact remains that the Amended Motion for New Trial did not claim error in the refusal of a jury instruction on the subject of mitigation of damages, and that issue is not preserved for our review.

[12]Wynn challenged the sufficiency of this evidence to support submission of the mitigation instruction at trial, and does so again on appeal. Because we otherwise find the trial court's refusal of the instruction to be proper, we need not address whether the evidence would have been sufficient to permit submission of a mitigation instruction limited to Wynn's alleged failure to make reasonable efforts to return to work when cleared by a physician.

evidence admitted at trial did not support submission of BNSF's proffered mitigation instruction.[13] The trial court's refusal of the instruction was not erroneous, plainly or otherwise. In fact, it would have been legally erroneous to submit a mitigation instruction in the form proffered by BNSF. *Spence*, 547 S.W.3d at 777 (holding that each issue submitted by instruction must be supported by the evidence presented at trial).

BNSF attempts to sidestep this evidentiary deficiency by arguing in its third point on appeal that "additional evidence remained to be presented to the jury." [Appellant's Brief, p. 45] BNSF is referring to the fact that it advised the trial court during the instruction conference that it had additional evidence of Wynn's failure to cooperate with recommended physical therapy, including an exhibit that purportedly showed Wynn was discharged from physical therapy for non-compliance, and testimony from a physician that Wynn failed to see him again after being told to return to work. [Appellant's Brief, p. 48] However, even presuming BNSF attempted to admit this "additional evidence" at trial, it claims no trial court error on appeal relating to the exclusion of this "additional evidence."[14]

BNSF's third point on appeal is denied.

---

[13]Even if BNSF's proffered mitigation instruction had been modified to use the word "or" instead of "and" between the two claims, it would have been legally erroneous to submit the instruction. When issues are submitted in the disjunctive in a jury instruction, "'each alternative claim . . . must be able to stand alone and there must be sufficient evidence to support each allegation.'" *Rhodes v. Kandlbinder, Inc.*, 557 S.W.3d 502, 509 (Mo. App. E.D. 2018) (quoting *Banther v. Drew*, 171 S.W.3d 119, 122 (Mo. banc 2005)).

[14]Though BNSF's mitigation instruction was refused, BNSF was nonetheless permitted to argue during closing about whether Wynn's damages should be mitigated by his failure to earlier return to work though allegedly able to do so.

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge


All concur